Hon. PIERPOINT ISHAM, }
Hon. MILO L. BENNETT, } ASSISTANT JUDGES.

---

### IRA BROWN *v.* LENSIE SAYLES.

*Sale of articles to be thereafter manufactured. Purchaser's acceptance of them with latent defects. Construction.*

When an article is to be manufactured to order, and nothing is said as to the quality of the material to be used, it is implied that it shall, at least, be of an ordinary quality.

The acceptance of an article so manufactured is not binding and conclusive upon the purchaser, if the material used was defective, but the defect was not known and could not have been ascertained by careful inspection.

Brown *v.* Sayles.

After such an acceptance of a defective article the purchaser will only be liable for the value of the article, and not for the contract price.

The defendant sold to the plaintiff a horse, for $10, cash and a wagon, to be delivered at a future day, worth $60. *Held*, that the value of the wagon was an essential part of the contract and not a mere matter of description; and that the delivery and acceptance of a wagon, worth only $25, in consequence of defects not known to the defendant and which he could not have ascertained upon a careful inspection, at the time of its delivery, would operate only as a payment of $25, towards the $60.

BOOK ACCOUNT. The following facts were found and reported by the auditor. In February, 1848 the defendant sold to the plaintiff a horse, for which the plaintiff agreed to pay a one-horse buggy wagon, worth sixty dollars, to be delivered by the 15th of June following, and ten dollars in money, payable on demand. In the following autumn, before either the wagon or money had been paid, it was agreed between them that the plaintiff, who was a wagon-maker, should make for the defendant a one-horse lumber wagon wood for eighteen dollars, ten dollars of which was to be be applied in payment of the ten dollars to have been paid in cash for the horse. In May, 1849, the one-horse buggy wagon, to be paid toward the horse, was delivered to and accepted by the defendant; and early in the following June the wagon wood was made and delivered to the defendant, and afterwards, during that month, the defendant paid to the plaintiff two dollars on account. Both the wagon and the wagon wood were painted when they were delivered, the painting of the wagon wood having been done at the defendant's request. Some part of the lumber used in the construction of both the wagon and the wagon wood was defective, but the defect was latent and unknown to either party at the time they were delivered. The actual value of the wagon was twenty-five dollars, and of the wagon wood, including painting, eighteen dollars. Upon these facts, the auditor allowed the plaintiff's account as follows, for making wagon wood $18.00; for painting the same $4.00 : credits to be deducted,—balance due for horse $10.00; cash $2.00; leaving a balance of $10.00 due to the plaintiff; and disallowed the defendant's account in which he charged the plaintiff for the horse $70.00, and cash $2.00, except so far as they were included in the plaintiff's credits.

Upon the report of the auditor, to which the defendant excepted, the county court, June Term, 1853,— PIERPOINT, J., presiding,— rendered judgment for the plaintiff. Exceptions by the defendant.

*J. Prout* and *E. N. Briggs*, for the defendant.

The acceptance concluded the defendant only in reference to defects which were apparent or within his knowledge.   *Wilkins* v. *Stevens*, 8 Vt. 214.   *Sias* v. *Bates*, 18 Vt. 579.

The wagon, being worth less than was supposed, on account of the latent defects in it, should only be allowed at its value.   *Stevens* v. *Richards*, 2 Aik. 81.   1 Smith's Lead Co. 195.   2 do. 39.

*J. A. Beckwith* for the plaintiff, cited the opinion of REDFIELD, J., in *Austin* v. *Wheeler*, 16 Vt. 97.

The opinion of the court was delivered, at the circuit session in September, by

BENNETT, J.   The first question on this report is as to the defendant's right to a deduction from the contract price on the one-horse wagon wood.   The auditor finds that the timber used in the manufacture of the wagon wood was defective, though the defects were latent and unknown to either party at the time the wagon wood was delivered.   It may be remarked that this was not a contract to purchase a wagon wood then on hand, but a contract for the plaintiff, who was a wagon-maker, to manufacture and deliver to the defendant a wagon wood at a future day.   It may well be admitted, as a general rule, that the seller is not bound to answer for the *quality* or *goodness* of the article sold, unless there is an *express warranty*, or a *fraud*.   The maxim is *caveat emptor*; yet it has been frequently adjudged, that under special circumstances he may be made liable.   In *Jones* v. *Bowden*, 4 Taun. 847, it was held that an implied warranty might arise from a custom in a particular trade; and it seems, at the present day, to be pretty well settled, that if a commodity is sold for a particular purpose, the purchaser relying upon the skill and judgment of the seller, that it will answer such purpose, there will arise an implied warranty, that it shall be reasonably fit for the particular purpose for which it is wanted.   See *Gray* v. *Cox*, 4 B. &. C. 108, the opinion of Lord TENDERDEN.   *Jones* v. *Bright*, 5 Bing. 533.   *Brown* v. *Edgington* 2 Man. & Gran. 279.   *Shepherd* v. *Pybus*, 3 Man. & G. 867; and the doctrine of these cases has been adopted by several of the American courts.   But the case now before us is one where the

contract of sale was for an article thereafter to be manufactured, and the precise question is, what is the law in such a case, where the article is not then manufactured, and the same person is the seller and the manufacturer. In *Laing* v. *Fidgeon*, 6 Taun. 108, the saddles were delivered upon a written order, and the declaration was upon an understanding to deliver saddles of a good and merchantable quality, and the breach assigned was the non-delivery of such saddles ; and it was held that it was an implied term in the sale that the saddles should be *merchantable*.

In the case of the purchase of a barge of a barge-builder, there was an attempt to imply a warranty, that the barge was fitted for a peculiar service, from the fact that the seller knew *indirectly* that it was wanted for such service, though no such notice was given to the seller by the purchaser ; but the court said that upon such a state of facts, the only implied warranty was that the barge was reasonably fit for use, as an ordinary barge. See *Shepherd* v. *Pybus*, 4 Scott N. S. 444. In these cases it would seem that in the one, the saddles were on hand, and in the other the barge, at the time of the making of the contracts, and were the subjects of inspection ; and they have been said to have been executed contracts.

The case of *Gardiner* v. *Gray*, 4 Camp. 144 is a strong case, of implied warranty in the sale of manufactured articles. The commodity sold in that case was *waste silk*; it was inferior in quality and not saleable under that denomination ; still it was waste silk ; and it was held that it was an implied term of the contract, that the silk should be of a merchantable quality. Other cases seem to go the same length ; but I am aware that the doctrine that an implied promise can be raised against the manufacturer and seller of a commodity, as to its quality, has met with strenuous opposition, and perhaps the question can not be considered as settled.

By many jurists it has been thought that the case constituted an exception to the general rule, and that from the peculiar means of knowledge which the manufacturer had to know the quality of the article sold, and the confidence put in him, it would be more conformable to sound ethics in such a case to apply the maxim *caveat venditor* and not *caveat emptor*, and cast the loss upon the *manufacturer* instead of the *purchaser*. But we do not feel called upon to examine this question at any length, and much less to

express an opinion upon it.  Suffice it to say that in the case before us, the article was not on hand at the making of the contract and the wagon wood was in effect made to order, and though the contract was silent as to the quality of the timber to be used, yet it seems to us that it was implied that the timber should, at least, be of an ordinary quality as to goodness.   Notwithstanding the courts of New York have gone great lengths in repudiating the doctrine of *implied* warranties; yet in *Howard et al.* v. *Hoey*, 23 Wend. 350, it was held, that in a contract for the sale and delivery of an article of merchandise, at a future day, where there was no selection or setting apart at the time of particular articles of the property, so as to pass the property *in praesenti*, to the purchaser, *merchantable quality*, that is, such, at least, as will bring the average price, is always intended; and in *Gallagher* v. *Waring*, 9 Wend. 20, it is said, "suitableness enters into every promise to deliver articles of manufacture."   Judge Cowen, in the case in the 23d of Wend. admits that it stands conceded by all the cases that he has seen, that where the contract is to deliver an article not defined at the time, at a future day, whether the vendor has an article on hand of the kind, or it is afterwards to be procured or manufactured, the promisee cannot be compelled to put up satisfied with an inferior article, and that the contract carries an obligation, that the article shall, at least, be of a medium quality.   It is, I apprehend, according to the received opinion of the whole profession, that if an article is ordered, and one is sent not of a medium quality, the person ordering it may on its arrival reject it, and this upon the ground of an implied promise that it shall be of a medium quality.   This principle is as far as it is necessary to go to decide the present case, and so far, we think it is safe to go, beyond question.   If when the wagon wood was delivered, the defects in the wood had been visible, the defendant might have refused to receive it; but under the circumstances, he cannot be bound by his acceptance of it.   Where there is no opportunity to inspect the commodity, or where an inspection would be useless, as in the present case, the maxim *caveat emptor* has no application.   Nothing can be made out of the acceptance of the wagon wood by the defendant.   At that time, the case shows, the defect in the quality of the timber was not known to the defendant, and could not be upon the most careful inspection.   No

principle of law is better settled than the one that a party is not bound by his acts, where he acts upon a supposed and mistaken state of facts, the correctness of which he is no way responsible for. The case cited by the plaintiff's counsel of *Austin* v. *Wheeler*, 16 Vt. 97 is not at variance with that position. The present case is silent as to the time when the defendant discovered the defective character of the timber, or the means by which it was done, but probably upon the subsequent use of the wagon. It is possible that he might then have rescinded the contract of purchase, but I think not.

It seems to be settled law in England that a mere breach of warranty without fraud is no answer to an action for the price, but can be used only as a ground to reduce the damages, and not as a means of rescinding the contract. The same is the law in this country. See *Parson* v *Sexton* 4 M. G. & S. 889. *Freeman* v. *Clute*, 3 Barb. 424. *Thornton* v. *Wynn*, 12 Wheat. 183. *West* v. *Cutting*, 19 Vt. 536.

The purchaser is not liable for the contract price, but for what the article was worth. *Okell* v. *Smith*, 1 Stark. 107. In this case the auditor has found that the wagon wood was worth but fourteen dollars, exclusive of the painting, and we think the plaintiff's right of recovery for that article should be limited to that amount.

So far as the buggy wagon is concerned, the case, though it may stand upon the same ground, may well be put on another ground. The plaintiff was to pay the defendant for his horse, ten dollars in cash, and a buggy waggon, to be delivered at a future day, *worth sixty dollars.* The value of the wagon is a part of the express contract, and an essential part of it, and is not to be treated simply as matter of description. The plaintiff could not perform his contract by the delivery of a wagon worth only twenty-five dollars, and in this respect it is quite immaterial whether he knew of the defective character of the timber of which the wagon was built, or not. The defendant has not got what he had a right to expect by the contract, and the horse has not been paid for but in part. The answer to the argument that the defendant is bound by the acceptance of it, is the same as has been made in relation to the acceptance of the wagon wood.

The judgment of the county court is reversed, and judgment for the defendant to recover the balance due him. The defendant's

account should stand as charged at seventy-two dollars, from which the plaintiff's account as allowed by this court should be deducted, viz, the wagon wood at fourteen dollars, the painting at four dollars, and the buggy wagon at twenty-five dollars, making in the whole forty-three dollars, leaving a balance of twenty-nine dollars due defendant, to which the clerk will add the interest from the time the horse was to have been paid for by the plaintiff, namely, the 15th day of April, 1849.