JOHN A. CUNNINGHAM & others *vs.* SAMUEL HALL.

If in a contract for the construction of a vessel it is agreed that she shall be covered with pine plank, and that the builder shall see "that she is just right in all respects," the latter agreement is qualified by the former; and the purchaser assumes the risk of defects which are naturally incident to pine plank, and were not known to the builder, and could not have been discovered by him by the exercise of reasonable care and skill. And in such case there is no implied warranty which will cover the defects.

In an action for breach of warranty of a vessel constructed under a contract that she should be covered with pine plank, and that the builder should see "that she was just right in all respects," parol evidence is admissible to show that defects which were found to exist in her arose from the use of the pine plank, and were naturally incident thereto, and were not known to the builder, and could not have been discovered by him by the exercise of reasonable care and skill.

"Reasonable care and skill" is a relative phrase, and in its application as a rule or measure of duty, will vary in its requirements according to the circumstances under which the care and skill are to be exerted.

In an action for breach of warranty of a vessel constructed and sold under a special contract, the burden of proof is on the plaintiff throughout, to establish the alleged breach of warranty.

A deposition taken to be used in the United States court, in a cause of which that court had not jurisdiction, and without the certificate as to the manner of administering the oath to the deponents prescribed by the statutes of this commonwealth, is inadmissible in evidence, although taken in proceedings relating to the same subject and between the same parties.

A survey of a vessel signed by two persons, only one of whom is examined as a witness and testifies to its correctness, is inadmissible.

CONTRACT against a ship-builder, to recover damages for a breach of contract in building and completing a ship, which, when partially built, the plaintiffs agreed to purchase. The agreement for the purchase was contained in letters, only the material portions of which are here given. On the 17th of

August 1852 J. M. Forbes wrote to the defendant as follows: " Having been a week or two in the mountains, I have gathered courage to make you an offer for the new ship, if still unsold ; which we must try and finish up to-morrow, as I go to Nashon next day.   If you will finish her in the same style with the Polynesia, adding the six inches depth and seven and a half feet length, I will give you $58,000 for her, payable on the same terms as ' Polynesia ' contract.   [Then followed certain specifications, which are not now material.]   I dare say there may be other things which ought to be settled now, and which you can tell me about; but in the main my notion is that, as I know nothing about ships, and have no captain in view to superintend her, I have to depend upon you to see that she is just right in all respects."   The next day, a memorandum signed by Mr. Forbes and the plaintiffs, respecting the ship, contained the following provision :  " General specifications and style same as ' Polynesia.' "   On August 18th, the defendant replied to Mr. Forbes as follows :  " Your favor of the 17th instant has been received ; and, in reply, I shall accept the offer therein contained for the new ship now being built by me at East Boston, agreeable to the specifications therein named."

At the trial in this court, before *Chapman*, J., it appeared that at the time these letters were written the frame of the ship was partly up, but no planking or calking had been done.   The details of the evidence respecting the defects relied upon as constituting a breach of the contract, and the instructions of the judge in relation thereto, are sufficiently stated in the opinion.

It appeared that the plaintiffs had originally brought a libel *in personam* against the defendant in admiralty, in the United States district court for the district of Massachusetts, for the same cause of action, and recovered a decree for damages therefor, which was reversed by the circuit court on appeal, on the ground that the cause of action was not within the jurisdiction of a court of admiralty ; and many depositions were taken in those courts by the plaintiffs, of witnesses who were cross-examined by the defendant.   The certificates upon these depositions

did not show that the oath was administered to the deponents in the form required by the statutes of this commonwealth; and the judge excluded them, although proof *aliunde* was offered that they were taken in the manner in which depositions used in the state courts are taken. One of the depositions so offered was taken by the defendant, but used in the United States court by the plaintiffs.

A deposition of Thomas Hunt, who surveyed the vessel after her first voyage, taken and used in the United States district court, was admitted, under the following agreement signed by the counsel of the parties: " It is agreed that the deposition of Thomas Hunt, taken by the libellants . . . . may be used in a suit at law between said parties," &c. This witness testified that he surveyed the vessel at Whampoa, and made written reports thereof, which were true. These reports were annexed to his deposition, and were signed by himself and one Wilson, who was not a witness. The plaintiffs offered to read them to the jury; but the judge excluded them.

The jury returned a verdict for the defendant, and the plaintiffs alleged exceptions.

*F. C. Loring & J. Lathrop,* for the plaintiffs. 1. The contract contains an express warranty that the ship should be "just right in all respects." By this warranty, the defendant took the risk of all latent defects. *Whitmore* v. *South Boston Iron Co.* 2 Allen, 52. *Osgood* v. *Lewis,* 2 Har. & Gill, 495. *Jones* v. *Bright,* 5 Bing. 533. *Kellogg* v. *Denslow,* 14 Conn. 411. *Kiddell* v. *Burnard,* 9 M. & W. 668. *Higginson* v. *Weld,* 14 Gray, 165. 2. There was also an implied warranty that she should be free from defects. *Laing* v. *Fidgeon,* 6 Taunt. 108. *Howard* v. *Hoey,* 23 Wend. 350. *Cleu* v. *McPherson,* 1 Bosw. 480. *Cunningham* v. *Hall,* Sprague's Decis. 404. *Shepherd* v. *Pybus,* 3 Man. & Gr. 868. *Getty* v. *Rountree,* 2 Chandl. (Wisc.) 28. In a matter of so much importance as the building of a ship, more than ordinary care is required. *Steamboat New World* v. *King,* 16 How. (U. S.) 474. Besides; the plaintiffs placed especial confidence in the defendant. *Brown* v. *Edgington,* 2 Man. & Gr. 279. *Hoe* v. *Sanborn,* 21 N. Y. 552. 3. The defendant

warranted that the calking should be well done, and not merely that he would exercise reasonable care and skill in the matter. 4. The parol evidence as to the occurrence of defects in pine plank was inadmissible. 5. The facts in proof changed the burden of proof. 2 Parsons Mar. Law, 140, *n.* 1. *Wright* v. *Orient Ins. Co.* 6 Bosw. 269. 6. The depositions and the surveys were admissible.

*B. R. Curtis & C. P. Curtis Jr.*, for the defendant.

MERRICK, J. The terms of the contract, for the breach of which the plaintiffs seek to recover damages, are stated in the correspondence between the parties. In his letter of the 17th of August, Mr. Forbes, who appears to have acted in making the bargain as the agent of the plaintiffs, after saying " if you will finish her in the same style with the ' Polynesia,' " and enumerating several other particulars not necessary now to consider, offered to give the defendant $58,000 for the ship when it should be finished and delivered. To this he added that, " as I know nothing about ships, and have no captain in view to superintend her, I have to depend upon you to see that she is just right in all respects." The ship was afterwards completed and delivered to the plaintiffs, and accepted and paid for by them, and they sent her upon a voyage from Boston to San Francisco, and thence to Whampoa in China. They allege that she proved to be essentially defective, both in the manner, and in the materials of which, she was constructed; that the calking was imperfect and insufficient; that a part of the plank with which the frame of the ship was covered were unsound and rotten; and that owing to these defects she was not seaworthy, but was unfit for use. And they contend that, by the terms of the contract, the defendant warranted that the ship, upon its delivery to them, should be sound and strong in all its parts, so as to be fit for use and suitable for service in the line of business for which she was designed and built, and in which she was to be employed; and that this warranty extends to all latent defects in the materials used in her construction, although they were such as could not be discovered upon careful examination, and in the exercise by the builder of reasonable care and skill.

It is conceded by the plaintiffs that the ship Polynesia, re-ferred to in the letter of Mr. Forbes, was covered with pine plank. And it is stated in the report that the vessel purchased by them was planked by the defendant with the same kind of material, by their agreement. In other words, it is mutually admitted by the parties that, upon a true construction of the written contract declared on, the defendant was on the one side bound, and on the other entitled, to use pine plank in planking the ship. It is admitted that such plank were used for that purpose.

Upon the trial, the plaintiffs introduced evidence tending to show that the vessel began to leak immediately upon sailing; that the leak continued to increase until her arrival in China; and that upon examination of her there it was found that sev-eral of the planks in her bottom were so defective as to require that they should be taken out and replaced with new. And thereupon the defendant was allowed to introduce evidence, against the plaintiffs' objection, tending to show that pine planks are subject to latent defects, called "heart shakes," formed in pine trees in the process of their growth; and that it is some-times impossible to discover these defects by the exercise of rea-sonable care and skill in adapting and fastening such plank to the frame of a ship.

In submitting the issue to the jury, the presiding judge in-structed them that, by the terms of the contract, upon a con-struction of it admitted by the parties to be correct, in reference to the kind of materials to be used in finishing the ship, the work in building and finishing it was to be done in a workman-like manner, and that the materials to be used were to be such as were reasonably fit and proper for such a ship; and that this meant, as to the materials, that they should contain no defects which could be discovered by the exercise of reasonable care and skill, but did not extend to natural defects in timber which are incident to its process of growth, and which cannot be discovered by the exercise of such skill and care. He further instructed them that in this class of cases there is also a manu-facturer's warranty, but that this extends no further than the

provisions of the express warranty, as the written contract had already been construed and explained.

These instructions having been given with particular reference to the meaning of the contract, as understood and interpreted by the parties, concerning the kind of plank with which the vessel was to be covered by the defendant, and to the facts in evidence, were correct.

It is undoubtedly now a well settled rule, that if an article be ordered of a manufacturer for an especial purpose or a particular use, and he agrees to furnish it, and nothing is said by the parties as to the materials of, or the manner in, which it shall be made, there is an implied warranty on his part that it shall be fit for that use. 1 Parsons on Con. 468. *Whitmore* v. *South Boston Iron Co.* 2 Allen, 52. And such warranty will extend to latent as well as to open defects. Thus it has been determined that in a contract to build, sell and deliver a buggy wagon, at a fixed price and in payment of a preëxisting debt, there was an implied warranty against all secret and latent defects in the materials of which it was constructed, although they could not be discovered upon the most careful examination. *Brown* v. *Sayles,* 27 Verm. 227. So where there was a written contract " for the sale of the new barge now lying at the wharf," it was adjudged that a warranty might be implied that the barge was reasonably fit for all such service as vessels of that class were usually and commonly employed in. *Shepherd* v. *Pybus,* 3 Man. & Gr. 868. To the same effect are the decisions in the cases of *Laing* v. *Fidgeon,* 6 Taunt. 108, upon an order for "goods for North America, 3 dozen single flap saddles," and of *Brown* v. *Edgington,* 2 Man. & Gr. 279, upon the sale of a " crane rope."

The whole doctrine as to implied warranties in matters of this kind, and the reason and limitations of it, are very briefly but accurately stated by Tindal, C. J., in the case of *Brown* v. *Edgington,* above cited : " If a party purchases an article upon his own judgment, he cannot afterwards hold the vendor responsible, on the ground that the article turns out to be unfit for the purpose for which it was required ; but if he relies upon the judgment of the seller, and informs him of the use to which the

article is to be applied, it seems to me the transaction carries with it an implied warranty that the thing furnished shall be fit and proper for the purpose for which it was designed ; but if the vendee relies upon his own judgment, he cannot hold the vendor responsible." And thus where a person desires to obtain an article for a particular purpose, and, not being skilled in respect to such article, applies to one professing to be acquainted with the subject, or who by his occupation holds himself out to the world as understanding it, and the latter furnishes what he alleges to be suitable for it, it is plainly to be inferred that both parties understood the purchase to be made on the judgment and responsibility of the seller. *Hoe* v. *Sanborn*, 21 N. Y. Rep. 552. But if a purchaser, or a person who orders an article of a manufacturer, judges solely for himself, and elects in what manner or of what materials it shall be made, there can be no such implication. If the thing ordered is afterwards to be manufactured, and he directs or assents that it shall be made in a certain form, shape or style, or upon a designated pattern, and it is made in conformity to such direction or assent, the manufacturer will not be responsible for any injurious consequence, if it wholly fails to subserve the purpose for which it was designed, for his judgment and skill were not in such case relied upon by the other party. But if an article or fabric in the particular line of his profession or business is ordered of, or contracted for with, a manufacturer, for a special and designated purpose, and the parties agree that it shall be constructed of a certain kind of materials, but the selection of the particular articles to be used and the way and manner of using and adapting them to the fabric, in the completion of the work, are left to the choice and judgment of the latter, without any special stipulations relative thereto, he will not in that case be liable for any loss or damage which may result from the imperfection of, or natural defects in, that kind of material ; but he will be held to have impliedly warranted that he possesses the knowledge and skill requisite to use them properly and in the most advantageous manner, and that, in answering the order or in fulfilling his contract, he will use all reasonable care and skill in the selection

and use of them. And if, through his failure in either of these respects, the article or fabric furnished is unsuitable or insufficient for the purpose for which it was supplied, he will be re sponsible in damages therefor.

And therefore, in the present case, if the defendant, in his contract with the plaintiffs, had simply agreed that he would finish and complete the vessel then on the stocks, and deliver it so finished to them at a stipulated price, there would have been an implied warranty on his part that it should be, both as to the workmanship and as to the materials used in its construction, fit for the service for which it was sold, or for the service to which vessels of that class were known by him to be commonly and usually appropriated. But the contract was in fact modified by the clause that it " should be finished in the style of the Polynesia," or, in other words, by a stipulation that it should be planked with pine plank. Under this modification of what would otherwise have created a general liability, the defendant was bound only to use reasonable care and skill in the selection and preparation of that kind of plank, and in applying and fastening them to the frame and body of the vessel ; for the plaintiffs, in consenting to the use of such materials, acted upon their own judgment, and assumed upon themselves the risk and hazard of the sufficiency of such kind of plank for the purpose for which they allowed it to be used; and they could afterwards only hold the defendant responsible for damages resulting from his failure to exercise reasonable skill and care in the selection of the planks which he used, or in the application of all known and proper tests to discover if there was unsoundness in any of them, or from the imperfection or unskilfulness of his work in covering the ship. That this is all which was or could have been expected or required by the plaintiffs is apparent from that part of the letter of Mr. Forbes in which he says that, having no captain to superintend the finishing of the vessel, he must rely upon the defendant to see that she is just right in all respects. That is, he expected, and the defendant by accepting the office promised and impliedly warranted, that he would do all that could be done by a faithful superintendent. And this, since the parties had agreed

upon the kind of materials with which the vessel should be completed, could be only the exercise of due care to prevent the use of unsound or defective materials, and to cause the whole work to be done in a skilful and workmanlike manner. It is in this view that the instructions given to the jury are found to have been correct in principle and well adapted to the case and the facts in evidence.

It has been suggested for the plaintiffs that in a matter of so much importance as the building of a ship, the builder is bound to exercise more than reasonable care and skill; that he is required to use the utmost possible skill in detecting and guarding against defects which endanger human life. But in reality there is no difference in the degree of care or skill which would be required of a ship-builder by the use of the one or the other of these expressions. Reasonable care or skill is a relative phrase, and what this requires is always to be determined by consideration of the subject matter to which it is applied. *Holly* v. *Boston Gas Light Co.* 8 Gray, 123. *Fletcher* v. *Boston & Maine Railroad*, 1 Allen, 9. *Sullivan* v. *Scripture*, 3 Allen, 564. In its application as a rule or measure of duty to which a builder is subject in the building of a ship, and especially where it is constructed in part of materials known to be subject to defects which may essentially impair its strength or endanger its safety, it calls for the most vigilant inspection of every article used, and the employment of every known test or means by which they may be detected. When stated in such a connection, it seems impossible that any one should fall into the error of supposing that it was of any less stringent or comprehensive signification than that. If any apprehension of that kind was really entertained, a particular explanation of its meaning ought to have been requested of the court.

All the other rulings to which exception was taken by the plaintiffs, and which are still insisted upon as at all material now to be considered, appear to have been accurate and unobjectionable. The burden of proof to establish the alleged breach of warranty remained upon them throughout the whole trial. *Powers* v. *Russell*, 13 Pick. 69. *Burnham* v. *Allen*, 1 Gray, 496

*Crowninshield* v. *Crowninshield,* 2 Gray, 524. The depositions taken in the suit between the same parties in the United States court were properly excluded. The right to use depositions in evidence is regulated by statute, and none are admissible on the trial of issues of fact unless under some positive provision of law. There is none which would have justified the court in allowing those which were offered by the plaintiffs to be read to the jury. Gen. Sts. *c.* 131, § 30. *Simpson* v. *Carleton,* 1 Allen, 109. The surveys which were attached to the deposition of Hunt were inadmissible. They were signed by Wilson as well as by the deponent; and to allow them to be read to the jury would be the same as permitting statements of a person not under oath to be received in evidence. And as it was a part of the contract between the parties that the ship should be planked with pine plank, the evidence as to the character of that material, and its liability to be injuriously affected by latent and undiscoverable defects, which was produced by the defendant, was competent and rightly admitted.        *Exceptions overruled.*