## WING v. CHAPMAN.

### Warranty. Sale. Evidence.

In case for fraudulent warranty of a yoke of oxen, the declaration alleged that defendant falsely and fraudulently warranted the oxen well broken, orderly, peaceable, and suited for a special purpose known to defendant, for which plaintiff wanted them, whereas they were unbroken, disorderly, wild, and unsuited for said purpose, as defendant well knew. Defendant was allowed, against plaintiff's objection, to show their fair market value at the time of sale; but the court charged that the difference between the value of the oxen as they actually were, and their value as it would have been if they had been as warranted, was the measure of damages. *Held*, that the evidence was inadmissible, and that the error of its admission was not cured by the charge.

CASE for false warranty of a yoke of oxen. Plea, the general issue, and trial by jury, September Term, 1875, REDFIELD, J., presiding.

The second count alleged that the defendant offered to sell the plaintiff a yoke of oxen ; that thereupon the plaintiff told the defendant that, having the care of a farm occupied by an aged man and his crippled son, he wished to buy a yoke of well-broken, orderly, and peaceable oxen, such as might be safely used by the occupants of said farm ; that the defendant, then well knowing the said oxen to be wild, disorderly, and hard to yoke, falsely and fraudulently warranted them to be peaceable, orderly, well-broken oxen, such as the occupants of said farm could safely use, and such as the plaintiff had described ; that the plaintiff, relying upon said warranty, purchased said oxen and paid the defendant there-

for the sum of $147.50 ; that the said oxen were wild, unbroken, and disorderly ; that the occupants of said farm could not yoke or use them, and that they were of ·no use to the plaintiff as working oxen ; that afterwards the plaintiff offered to return the said oxen and receive his money, but that the defendant wholly refused. The plaintiff's evidence tended to support the allegations of the declaration, and especially the allegation that the oxen could not be used on the farm by those occupying it, nor even by experienced hands, and that they were unruly and worthless as working oxen. The plaintiff offered no evidence as to the value of the oxen or their condition, but claimed to recover the difference between the value of the oxen as they actually were, and their value as it would have been if they had been as they were warranted to be. The defendant offered evidence tending to show that at the time the plaintiff purchased said oxen, their fair cash value, considering their weight and value per pound, was $150. To its admission the plaintiff objected, for that it had no bearing upon the issue. The defendant claimed that evidence of the actual market value of the oxen at the time of the purchase was material. The court said it had no bearing upon the case, but that if the defendant insisted, it might be admitted at the defendant's peril. The defendant insisted, and it was admitted, to which the plaintiff excepted. The court charged as to the rule of damages in accordance with the plaintiff's claim as herein stated. Verdict for the defendant.

*Joseph A. Wing*, pro se, cited *Virginia & Tennessee R. R. Co.* v. *Sayers*, 15 Am. Law Reg. N. S. 297 ; *Hine* v. *Pomeroy et al.* 39 Vt. 211, 221 ; *Wood et al.* v. *Willard et al.* 36 Vt. 82.

*Heath & Carleton*, for the defendant, cited Hilliard Rem. Torts, 448 ; *Woodward* v. *Thatcher*, 21 Vt. 580.

The opinion of the court was delivered by

POWERS, J. The declaration sets forth a contract of the defendant to deliver a well-broken and manageable yoke of oxen, suitable for use on the plaintiff's farm by an aged man and his crippled son. The plaintiff's evidence tended to show the making of such contract, and its breach. The defendant offered evidence

to prove the cash value of the oxen at the time of the sale, and the same was admitted against the plaintiff's objections. The pertinency of this evidence will depend upon the construction that should be given to the contract in issue. The object and purpose of the plaintiff in purchasing the oxen are fully set forth in the declaration, and it is alleged that this purpose was made known to the defendant, and he undertook to furnish oxen that would answer such purpose. He agreed, in substance, to deliver oxen that were well-broken, peaceable, and manageable in the hands of the persons who were to manage them. Such contract is quite unlike a general contract of sale. This contract is the sale of chattels for a peculiar and special purpose.

Even without any express warranty in this class of contracts, the law has now become pretty well settled, that where the special purpose of the buyer is made known to the seller, and the seller, with such knowledge, delivers the goods, the law implies that they are reasonably fit for the purpose specified. If the facts show that the buyer trusts to the judgment of the seller, the seller must see to it that he judges correctly. The question has been much discussed whether this doctrine applied in cases where the seller was not the manufacturer of the goods sold ; but it is now settled that it applies generally in all sales of property for a special purpose, if the sale is made on the judgment and skill of the vendor. The case of *Jones* v. *Bright et al.* 5 Bing. 533, is the leading case on the subject of such sales by a manufacturer. But the reasoning of the court in that case shows that even there the doctrine was not understood to be restricted to sales by manufacturers. BEST, C. J., says : " But I wish to put the case on a broad principle. If a man sells an article, he thereby warrants that it is merchantable—that it is fit for some purpose. If he sells it for a particular purpose, he thereby warrants it fit for that purpose, and no case has decided otherwise." Again he says : " If a man sells a horse generally, he warrants no more than that it is a horse ; the buyer puts no questions, and perhaps gets the animal the cheaper. But if he asks for a carriage horse, or a horse to carry a female or a timid and infirm rider, he who knows the qualities of the animal, and sells, undertakes, on every principle of honesty,

that it is fit for the purpose indicated. The selling, upon a demand for a horse with particular qualities, is an affirmation that he possesses those qualities. The opinions of PARK, BURROUGH, and GASELEE, JJ., in the same case, disclose the same view. The later case of *Brown* v. *Edgington*, 2 M. & G. 279, goes the full length in applying the doctrine to the case of any seller. In *Jones* v. *Just*, L. R. 3 Q. B. 197, the subject is again examined by the Court of Queen's Bench, in a masterly opinion by MELLOR, J. The proposition is there laid down that "in general on the sale of goods by a particular description, whether the vendee is able to inspect them or not, it is an implied term of the contract that they shall reasonably answer such description; and if they do not, it is unnecessary to put any other question to the jury." The doctrine is not new in this state. *Beals* v. *Olmstead*, 24 Vt. 114; *Brown* v. *Sayles*, 27 Vt. 227.

Now the question for the jury in the case at bar was, did the defendant undertake to supply oxen answering the description called for by the plaintiff? The evidence offered was to show the cash value of the oxen, that is, the fair market value. But the defendant did not undertake to sell upon the basis of the fair market value of the cattle; he undertook to supply a special market, and sold on the basis of a special value. The evidence was clearly inadmissible, and had a direct tendency to mislead the jury. But it is said that this error was cured by the charge. All that the exceptions disclose in relation to the charge is, that the jury were told that the measure of damages was the difference between the cattle as they were and what they would have been worth if they had been as warranted to be. The court regarded the evidence as improper, and the record should show that the jury were instructed to disregard the obnoxious evidence in their deliberations. The case was such and the evidence such, that a jury would be quite apt to misapply the rule laid down upon the subject of damages, unless specially cautioned on the subject. The safer way to prevent the possibility of misapprehension by the jury of the true issues of a case, is, to rule out improper evidence in the first instance, where there is no contention that it will be made competent by the aid of subsequent proof.

Judgment reversed, and cause remanded.