JACOB CRAM, Respondent, *v.* GAS ENGINE AND POWER COMPANY, Appellant.

*Erroneous measure of damages — when it cannot be reviewed on appeal — a manufacturer's implied warranty — charge to the jury.*

A claim upon appeal that a wrong measure of damages was adopted by a trial judge in his charge cannot be sustained where, upon the trial of the action, no exception was taken to the charge in that respect.

Upon the sale of an article by the manufacturer thereof, a warranty is implied that the article sold was properly and skillfully manufactured, that it was made of good material and is free from latent defects growing out of the manufacture. But such warranty does not extend to latent defects in the material used by him of which he had no knowledge.

Where a manufacturer contracts to supply an article which he manufactures, which is to be applied to a particular purpose, and where the buyer has no knowledge of the article, but necessarily trusts to the judgment and skill of the manufacturer, there is an implied warranty that it shall be reasonably fit for the purpose to which it is to be applied.

Upon the trial of an action brought to recover damages upon an alleged breach of warranty, the question as to whether the defendant did or did not warrant a naphtha launch, manufactured by him for the plaintiff, was controverted, and became a sharply contested question of fact, which was properly and fairly submitted to the jury. At the conclusion of the charge the plaintiff's counsel requested the court to charge "that if the boat was to be made by the vendors and was bargained for, for a particular purpose or use, and this was the understanding of the parties at the time, there arises an implied warranty that it shall be suitable for such purpose or use." Such request was charged, and the court stated, in addition, "the law implies that it will be reasonably safe for the purpose for which it is designed."

*Held,* that such charge that the boat should be reasonably safe for the purpose for which it was designed was erroneous and required the reversal of a judgment in favor of the plaintiff.

APPEAL by the defendant, Gas Engine and Power Company, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Seneca on the 19th day of December, 1892, upon the verdict of a jury for $1,400, after a trial at the Seneca County Circuit, and also from an order entered in said clerk's office on the 11th day of October, 1892, denying the defendant's motion to set aside the verdict and for a new trial made upon the minutes.

*S. D. Halliday,* for the appellant.

*David M. Dean,* for the respondent.

HAIGHT, J.:

This action was brought to recover damages upon a breach of warranty. It appears that in the fall of 1890 the plaintiff entered into an agreement with the defendant to construct for him a naphtha launch with a cabin in the central part thereof, according to plans and specifications agreed upon, for the sum of $7,000, and have the same in readiness to deliver to the plaintiff in May, 1891. It further appears that the launch was constructed and delivered to him at the time agreed upon, and that the plaintiff paid therefor $1,500 in cash, and by giving his promissory notes for the balance. He then proceeded with the launch to Sheldrake, on Cayuga lake, by way of the Hudson river and the Erie canal. The day after he arrived at Sheldrake he gave directions to his men to take the naphtha out of the tank, which they proceeded to do by means of a pump, whilst the launch was at anchor in the lake. After pumping out all of the naphtha that they could, they took a large sponge, tied it to the end of a stick, and with it soaked up and cleaned out the naphtha still remaining in the tank. The launch was then hauled into shore, alongside of a dock, where three barrels of new naphtha were emptied into the tank. A new propeller wheel was put on, and the bilge water in the bottom of the launch pumped out as fully as it could be with the pump, and the rest was cleaned out by means of the sponge which was used in cleaning out the tank. In the early evening of that day the plaintiff gave directions to his men to get the launch in readiness for a trip to Ithaca. Thereupon, his engineer started the engine, and another of his employees entered the cabin and lighted the lamps. In a few minutes thereafter an explosion occurred in the cabin, blowing it to pieces and setting the boat on fire. It partially burned, and sank in the water. Subsequently, the hull of the launch was drawn out upon shore and inspected. The naphtha tank, pipes and engine were found to be in perfect repair except as damaged by the fire.

Upon the trial the court charged the jury that in case they found for the plaintiff, their verdict should be for the purchase price paid, less the value of the remains of the launch after the explosion and fire. The jury rendered a verdict in favor of the plaintiff for $1,400, being the amount of cash paid by him, less $100, the value of the materials that remained after the explosion. The appellant

now contends that a wrong measure of damages was adopted. But we think that a complete answer to this contention is, that no exception was taken to the charge of the court upon this subject.

It is also claimed that the verdict is against the weight of evidence. The theory of the plaintiff, as we understand it, is that the defendant had warranted the use of naphtha in the launch to be safe. It is further claimed that in launches having cabins it is dangerous; that there is necessarily some escape of the gas generated from the fluid; that it is heavier than the air, and would consequently settle to the bottom, and that in an inclosed cabin, where the air did not circulate, it would accumulate, and that when mixed with the air so as to form one part of gas with twenty-five parts of air it becomes highly explosive; that gas had so accumulated in the cabin on this occasion, and that when the servant of the plaintiff entered and lighted the lamps he stirred the gas up with his feet, and it became ignited by the lamps, causing the explosion. On the part of the defendant it was claimed that the engine was placed in the stern of the launch, which was partitioned off by a bulkhead; that the space between the bulkhead and the stern was lined with copper; that the cabin only extended to the bulkhead, and that consequently the gas settling in the bottom could not pass into the cabin; that the plaintiff or his servants were guilty of negligence in pumping the old naphtha from the tank; that they had permitted it to run upon the deck of the boat, and that a part thereof had in some manner found its way into the bilge under the cabin, and that in cleaning out the bilge they had improperly used the sponge with which they cleaned out the tank; that the gas that had accumulated in the cabin had generated from naphtha carelessly permitted to get into the bottom of the launch; that the plaintiff's servant when he entered the cabin discovered the presence of gas by smelling it, and was guilty of negligence in thereafter proceeding to light the lamps. These respective theories were submitted to the jury, and, as we have seen, a verdict was found for the plaintiff. Whether the theory advanced by the defendant is the more rational and probable we do not deem it advisable now to consider, for under the view taken by us this review must be determined upon other grounds.

As we have shown, this action was based upon a breach of warranty. It is contended on behalf of the plaintiff that at the time he

entered into the contract with the defendant to construct the launch he had first contemplated contracting for a steam yacht, but that upon the representations of the defendant's president that the naphtha launches were perfectly safe for pleasure yachts, and that they could be safely operated by an inexperienced man with reasonable intelligence, after proper instructions, he concluded to contract for a naphtha launch instead. The question as to whether there was or was not a warranty was controverted upon the trial and became a sharply contested question of fact. This question was properly and very fairly submitted to the jury, but at the conclusion of the charge, the plaintiff's counsel requested the court to charge "that if the boat was to be made by the vendors, and was bargained for, for a particular purpose or use, and this was the understanding of the parties at the time, there arises an implied warranty that it shall be suitable for such purpose or use." This request was not only charged, but the court went a step further, and stated that "the law implies that it will be *reasonably safe* for the purpose for which it is designed;" and exception was taken by the defendant to this charge. There was no question as to the use for which the launch was designed. The plaintiff was a gentleman of wealth and leisure having a summer residence upon the shores of Cayuga lake. He desired the launch for a pleasure yacht for the use of himself, family and guests upon that lake, so that the question raised by the exception to the charge is squarely presented for determination. The counsel for the respondent has not given us his views upon this question or cited any cases sustaining his request to charge. We have, however, made quite a careful search of the books, and have examined numerous cases bearing upon the question, but have been unable to find any which we think sustains the charge. There are many varieties of implied warranties growing out of the numerous transactions among men. In certain instances the seller of an article impliedly warrants that he has the title and power to dispose of it. So, also, in certain cases, a merchant is deemed to have warranted the thing sold by him to be merchantable, and, in some instances, fit for the use or the purpose for which it is designed. In the case under consideration the implied warranty relates to a sale by the manufacturer of the article. We shall, therefore, confine our attention to the cases upon that subject, or those that are akin

thereto. It is undoubtedly the rule that in a sale of an article by the manufacturer a warranty is implied that the article sold was properly and skillfully manufactured, that it was made of good material and is free from latent defects growing out of the manufacture. But such warranty does not extend to latent defects in the material used by him of which he had no knowledge. Among the leading cases upon this question are those of *Hoe* v. *Sanborn* (21 N. Y. 552); *Randall* v. *Newson* (2 Q. B. Div. 102).

It may also be stated as a rule that where a manufacturer contracts to supply an article which he manufactures which is to be applied to a particular purpose, and where the buyer has no knowledge of the article, but necessarily trusts to the judgment and skill of the manufacturer, there is an implied warranty that it shall be reasonably fit for the purpose to which it is to be applied. This is the extent to which the authorities go. Among the authorities bearing upon this question are : *Jones* v. *Just* (L. R. [3 Q. B.] 196); *Laing* v. *Fidgeon* (4 Camp. 169); *Gammell* v. *Gunby* (52 Ga. 504); *Rice* v. *Forsyth* (41 Md. 389); *Brown* v. *Sayles* (27 Vt. 227); *Dutton* v. *Gerrish* (9 Cush. 89); *Shepherd* v. *Pybus* (3 Man. & Gr. 867); *Robinson Machine Works* v. *Chandler* (56 Ind. 575); *Dounce* v. *Dow* (64 N. Y. 411); *Loop* v. *Litchfield* (42 id. 351); *Bragg* v. *Morrill* (49 Vt. 45; 24 Am. Rep. 102; see reporter's note, page 104, and cases there cited); Benj. on Sales, § 661, and note 16 on page 644.

On referring to the request to charge, it will readily be seen that it does not embrace the essential elements of the latter rule. The charge is limited to cases in which the article bargained for was for a particular purpose or use, and does not embrace the want of knowledge of the character and fitness of the article by the buyer, or that he trusted to the judgment and skill of the maker as to its fitness. If, therefore, the plaintiff knew all about naphtha and its use in launches, he could not be deemed to have relied upon the judgment of the defendant's president, and there consequently could not have been an implied warranty that its use was safe. The charge as made does not incorporate the question of the knowledge of the plaintiff or leave that for the determination of the jury.

Is the charge, as made, within the first rule ? As we have seen, the manufacturer is required to properly and skillfully make and use

good materials, and he is liable for latent defects growing out of the manufacture. Such is his implied warranty. Applying this rule to the launch in question, the defendant was required to construct the boat and the machinery therein properly and skillfully, of good material. It must be free from defects growing out of its manufacture. It is not questioned but that all this was done. No complaint has been made in reference to the structure of the boat, of the engine, tank or other machinery therein. Even after the explosion, when the hull was drawn upon the shore and examined, the machinery was found to be in good order except in so far as it was damaged by the fire. As we have seen, the plaintiff's claim is that the launch was dangerous by reason of having a cabin into which the gas of the naphtha might escape and become dangerous. But the plaintiff had ordered the cabin constructed. It was built in accordance with his plans and specifications. If the defendant or its officers had known that a cabin in such a launch was dangerous, it might have been their duty to call his attention to the fact. Whether the plaintiff or the defendant's officers or agents knew of such danger does not appear. These questions were not incorporated in the charge or submitted to the jury. Under the charge, as made, the jury was required to find that there was an implied warranty that the launch was reasonably safe if it was made for a particular use and that use was understood by the maker. There being no question in reference to the use, or that it was understood by the maker, the charge, in effect, required the jury to find that there was a warranty that the launch with a cabin in it was safe. This, we think, was going far beyond the rule. It not only requires the maker to properly and skillfully construct, of good material, free from latent defects, but it requires him to warrant that naphtha may be safely used therein with a cabin on the boat, and this, without regard to the character or quality of the naphtha used, and without previous knowledge that a cabin rendered it unsafe. In the defendant's book of instruction furnished to the plaintiff, and by him put in evidence, we find in bold type at the bottom of each page, the words: "Use 76 deg. deodorized naphtha," and yet we are not informed either by the charge or the evidence as to the character and quality of the naphtha supplied to the launch before its explo-

sion. It is conceded that some of the naphtha will necessarily escape at the engine ; that no packing boxes have yet been discovered that will absolutely prevent the escape of steam or naphtha in small quantities. It is also conceded that naphtha, when brought in contact with the air, will quickly evaporate, that a gas will generate therefrom, and when mixed with air in the proportions already stated, it becomes dangerous. Its use must, therefore, necessarily be attended with some danger. The defendant was not the manufacturer or the seller of the naphtha. It only manufactured the launch. Its implied warranty extends to the launch, not to the naphtha. The damage complained of arose from the naphtha, or the gas that had been generated therefrom, which had escaped into the cabin, and not through any defect disclosed in the launch, its machinery, or its construction.

In the case of *Losee* v. *Clute* (51 N. Y. 494) it was held that the. manufacturer and vendor of a steam boiler is only liable to the purchaser for defective materials or for want of care and skill in its construction. We think an engine and boiler may fairly be taken for the purpose of illustration. A steam engine and boiler is usually operated by gas or coal used as a fuel, more usually coal. The manufacturer is liable to the purchaser by reason of his implied warranty for defective materials used in the manufacture, and for want of care and skill in its construction. Its use is attended with some danger. The sparks that arise from the burning fire if brought in contact with inflammable materials may ignite the same and cause damage. The steam that necessarily escapes may, also, in some instances produce damage ; but can it be claimed that the maker's implied warranty extends to injuries resulting from the escape of sparks or steam ? The use of kerosene in lamps for the purposes of light is attended with some danger, especially if the oil is not properly refined, or is not of a standard quality ; and yet it will hardly be claimed that a manufacturer of the lamps would be liable for the damages resulting from its use, where the lamps were properly constructed and of good material.

For the reasons stated, the judgment and order must be reversed and a new trial granted, with costs to abide the event.