N. C. HAHN, ADMINISTRATOR OF NORMAN CECIL HAHN, v. ERNEST L. PERKINS AND M. GAIUS LINK.

(Filed 7 April, 1948.)

**1. Negligence § 19b (4)—**

Circumstantial evidence which raises a reasonable inference of negligence is sufficient to be submitted to the jury.

**2. Negligence § 4f (1)—**

One who is a patron of a place of recreation conducted for profit is an invitee.

**3. Negligence § 4f (2)—**

A proprietor is not an insurer of the safety of invitees but is under duty to exercise due care to see that the premises are reasonably safe for the purposes for which they are maintained.

**4. Same—**

The evidence tended to show that intestate's body was found in the deep water of defendants' swimming pool and that before, during, and for sometime after his disappearance was noted, two lifeguards were on duty and several hundred persons were crowding the pool and the lands bordering thereon. *Held:* The evidence does not raise an inference of negligence on the part of the proprietors on the ground that they failed to provide a reasonably sufficient number of lifeguards, since there is no basis for the claim that additional lifeguards, however numerous or however competent, would have prevented the death.

**5. Same—**

The evidence tended to show that intestate, a twelve-year-old boy, was in the company of his mother near the refreshment stand at defendants'

swimming pool, that he became lost in the crowd, and that his body was found the next morning in the deep water of the pool. Sometime after the boy's disappearance the mother informed a lifeguard on duty that he was missing, but did not inform the guard that intestate could not swim or that he was last seen in or near the pool. The guard did not give the alarm but remained at his post where he could observe the bathers. *Held:* The circumstances fail to support the conclusion that any immediate action on the part of the guard would have prevented the boy's death.

6. Same—

The evidence disclosed that intestate, a twelve-year-old boy, while a patron of a swimming pool, was missed by his relatives during the afternoon and that his body was found the next morning in the deep waters of the pool, some ten feet below a reef of slippery rocks, and that there was a bruised place on his forehead. *Held:* Conceding that the proprietors were negligent in failing to mark the varying depths of the waters of the pool, the evidence fails to indicate any causal relation between such negligence and the death of intestate.

APPEAL by plaintiff from *Patton, Special Judge,* at the September Term, 1947, of CALDWELL.

The plaintiff, N. C. Hahn, as administrator, sought to recover damages of the defendants, Ernest L. Perkins and M. Gaius Link, upon a complaint charging that his intestate, Norman Cecil Hahn, suffered death as the proximate result of the wrongful act, neglect, or default of the defendants while the deceased was patronizing a public swimming pool conducted by the defendants for profit at a point on Wilson's Creek in Caldwell County known as Brown Mountain Beach. G. S., 28-173. The plaintiff undertook to sustain his alleged cause of action at the trial by the facts set forth below.

For the most part, Wilson's Creek, a natural watercourse, is both shallow and swift. It is impounded by a small dam near the foot of Brown Mountain in Caldwell County. After being released from this artificial pond through a mill-race, the waters of the creek run rapidly over a ledge of slippery rocks and suddenly broaden, forming a relatively still and wide pool, varying in depth from a few inches to twelve feet.

During the summer of 1942, the defendants controlled this pool and the adjacent land. Here they conducted a public swimming pool and public picnic grounds for personal profit. To protect their patrons in the use of the pool, the defendants stationed lifeguards in positions where they could supervise the bathers, and separated the shallow and deep waters in the central and lower parts of the pool by barriers consisting of ropes and floating barrels. They did not, however, erect or maintain any warning signs in the upper reaches of the pool. At one place in this area some ten feet downstream from the reef of rocks, the bottom dropped abruptly from extremely shallow water to a depth of twelve feet.

On 19 July, 1942, the plaintiff's intestate, a bright boy twelve years of age, went to the premises of the defendants as a patron with a group of five relatives, including his mother and an adult brother-in-law. It does not appear that he had ever been there before. He was unable to swim, but this fact was not communicated to the defendants or their employees. He wore a bathing suit so that he might wade in the shallow portions of the pool.

Shortly before three o'clock in the afternoon, the boy and his mother left the edge of the pool with a view to buying cold drinks at a nearby refreshment stand operated by the defendants. At this time both the pool and the land lying between it and the stand were crowded with people. The mother testified that there were then "three or four hundred people on the grounds and in the water." While they were going towards the refreshment stand, the boy suddenly pushed ahead of his mother and vanished in the crowd near the stand. This was the last time he was seen alive by any of the witnesses.

The mother soon reported the boy's disappearance to his brother-in-law, and they spent the remainder of the afternoon looking for him in vain among the crowds in the pool and on its banks. The testimony presented by the plaintiff shows that the defendants kept at least two lifeguards on duty at all times throughout the afternoon in positions where they could watch the pool and supervise persons bathing therein. Sometime after three o'clock and again an hour later, the mother told one of the lifeguards stationed at the pool that the boy was missing, and suggested that he notify the "people in the water" of that fact. The lifeguard replied that "he knew that he would not be able to attract the attention of the people in the pool" and remained at his post, observing the bathers. The mother did not intimate to the lifeguard on either occasion that she believed that her son was in the water or that she had any reason to suspect that he had sustained an accident.

About five-thirty o'clock in the afternoon, the mother and brother-in-law finally became apprehensive on account of their failure to locate the intestate among the dwindling crowds in the pool and along the banks. They then notified the defendants personally that the boy was missing and that they entertained fears for his safety. Thereupon a general alarm was given, and an organized search of the creek and of the adjacent lands was begun. The searchers persevered in their undertaking until seven o'clock the next morning, when the dead body of the intestate was found submerged in approximately twelve feet of water in the upper reaches of the pool, some ten feet below the reef of slippery rocks. There was a bruised place "about the size of half a dollar on the boy's forehead, or close to his eye." The evidence did not reveal the nature or extent of the injury reflected by the bruise, or whether there was any water in

the lifeless lungs of the deceased. No opinion testimony was offered in regard to the cause of death.

The action was dismissed in the court below upon an involuntary judgment of nonsuit under G. S., 1-183, after all the evidence on both sides was in, and the plaintiff appealed.

*Williams & Whisnant and Hal B. Adams for plaintiff, appellant.*
*W. H. Strickland and J. E. Butler for defendants, appellees.*

ERVIN, J. The plaintiff relied upon circumstantial evidence to make out his case against the defendants. Hence, his appeal raises this question: When interpreted most favorably for the plaintiff, were the circumstances shown on the trial sufficient to justify a reasonable inference that the death of Norman Cecil Hahn was the proximate result of the alleged wrongful act, neglect, or default of the defendants? *Corum v. Tobacco Co.,* 205 N. C., 213, 171 S. E., 78.

Since the intestate entered the place of recreation conducted by the defendants for profit in the character of a patron, he occupied the status of an invitee. *Englehardt v. Phillips,* 136 Ohio St., 73, 25 N. E. (2d), 829. See, also, *Jones v. R. R.,* 199 N. C., 1, 153 S. E., 637; *Adams v. Enka Corporation,* 202 N. C., 767, 164 S. E., 367. This fact did not make the defendants insurers of his safety while he remained upon their premises, but it did impose upon them the legal duty of exercising due care to see that such premises were reasonably safe for the purposes of bathing and picnicking. *Brooks v. Mills Co.,* 182 N. C., 719, 110 S. E., 96; *Smith v. Agricultural Society,* 163 N. C., 346, 79 S. E., 632, Ann. Cas. 1915 B, 544.

The plaintiff insists here that the trial court erred in nonsuiting the case upon the ground that the circumstances adduced on the hearing were sufficient to justify reasonable deductions that the defendants negligently violated their duty to the deceased by failing to provide skilled attendants in sufficient numbers to supervise bathers and to rescue any apparently in danger, and by failing to place or maintain signs indicating the dangerous depths of the water in the upper reaches of the pool, and by failing to institute immediate search for the deceased when their lifeguard was informed that he was missing, and that such negligent breach of duty on the part of the defendants was the proximate cause of the death of the deceased.

To uphold this position, the plaintiff invokes the decisions of courts in other states holding, in substance, that his obligation to exercise due care for the safety of his patrons may impose upon the proprietor of a public bathing resort in a particular case the duty of doing one or more of the following things: (1) To exercise ordinary care to provide a reasonably sufficient number of competent attendants to supervise bathers and to

rescue any apparently in danger; (2) to install and maintain in proper positions signs warning patrons of dangerous depths of water; and (3) to institute a timely search in the water for a missing bather on ascertaining that such bather may have been lost in the water. *Levinski v. Cooper* (Tex. Civ. App.), 142 S. W., 959; *Larkin v. Saltair Beach Co.*, 30 Utah, 86, 83 P., 686, 3 L. R. A. (N. S.), 982, 116 Am. St. Rep., 818, 8 Ann. Cas., 977; *Beaman v. Grooms*, 138 Tenn., 320, 197 S. W., 1090, L. R. A., 1918 B, 305; *Brotherton v. Manhattan Beach Improv. Co.*, 48 Neb., 563, 67 N. W., 479, 33 L. R. A., 598, 58 Am. St. Rep., 709. These rulings seem to be quite correct applications of sound principles of the law of negligence as recognized and enforced in this jurisdiction.

In our opinion, however, the contention of the plaintiff is untenable, even if it be granted that the facts adduced on the trial imposed upon the defendants all of the specific duties suggested above.

The assumption of the plaintiff that the defendants may be charged with actionable negligence on the theory that they did not exercise ordinary care to provide a reasonably sufficient number of competent attendants to guard and protect their patrons from the danger of drowning is plainly controverted by everything in the record. The defendants kept at least two lifeguards on duty at all times in positions where they could watch the bathers and rescue any apparently in danger, and neither they nor any of the multitude of persons crowding the pool and the lands bordering thereon ever saw the deceased in any difficulty in the pool or elsewhere. There is no basis whatever for the claim that additional lifeguards, however numerous or however competent, could have saved the boy from death.

The plaintiff urges that the defendants ought to be deemed guilty of actionable negligence because their lifeguard neglected "to take any measure to locate and rescue the child" on being notified by the mother that he was missing. It should be noted that the lifeguard was not informed that the deceased was last seen in or near the pool. It is suggested here, however, that if he had been so advised, he could hardly have pursued a more appropriate course than that of staying at his post, where he commanded a view of the pool and its occupants. In any event, the record is destitute of circumstances supporting the conclusion that any immediate action on the part of the lifeguard would have resulted in the rescue of the boy before death.

Even if it be conceded that the neglect of the defendants to mark the varying depths of the water in the upper part of the pool constituted negligence, there is a lack of testimony indicating any causal relation between such negligence and the death of the deceased. It is true that his body was found in deep water in the upper reaches of the pool just below the ledge of rocks. But this tragic fact answers none of the

questions it raises. Did the lad meet death in the pool, or on the slippery rocks above the pool, or somewhere farther upstream? Did his death result from drowning, or accident, or disease? If his death was caused by drowning, did it occur in the pool, or somewhere upstream? If he was drowned in the pool, did the drowning take place in the deep water where his body was found, or in some nearby shallow water where he became helpless from cramp or other sudden seizure?

When all is said, the testimony merely shows that the boy vanished in the crowd near the refreshment stand one afternoon, and that his lifeless body was found submerged in deep water in the upper portion of the pool on the following morning. The witnesses are unable to account for his disappearance, and the evidence does not reveal how, when, or where he died. All of these matters are left by the testimony to pure speculation. It cannot be reasonably inferred that the intestate was exposed to peril by any act or omission of the defendants or their employees, or that any action which they could have taken would have saved his life. For the reasons given, the judgment of involuntary nonsuit must be

Affirmed.