# Edward Stevens d/b/a Stevens Electric Service v. Cross Abbott Company, Abbott Realty Corporation and Springfield Realty Corporation

[283 A.2d 249]

No. 12-71

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed October 5, 1971

*Parker & Richards,* Springfield, for Plaintiff.

*Black & Plante,* White River Junction, for Cross Abbott Company, and Abbott Realty Corporation.

**Keyser, J.** Appellant-defendants Cross Abott Company (hereinafter termed Cross) and Abbott Realty Corporation (hereinafter termed Abbott) are owners and operators of a grocery chain known as Super Duper Supermarkets. On July 24, 1967, Abbott and Springfield Realty Corporation (hereinafter termed Springfield) entered into a written agreement by which Springfield agreed to lease space to Abbott for a supermarket in a building to be constructed on its premises at the Shopping Plaza in Springfield, Vermont. The plaintiff furnished labor and electrical materials for the wiring and hookup of Abbott's refrigerative equipment installed in the building. The amount of plaintiff's bill was $4326.43. On February 3, 1969, plaintiff brought suit on the common counts with specifications against all three companies.

Defendants Cross and Abbott each pleaded a general denial. In addition, Abbott alleged non-liability on the ground that it was the obligation of Springfield under its lease with Abbott to "Provide all Wiring and Connections for, and hook-up, Equipment throughout." Defendant Springfield failed to enter a plea or answer to plaintiff's complaint. And none of the defendants filed a cross-claim or complaint against its codefendants.

On December 4, 1969, eleven months after suit was brought, plaintiff filed a request for admissions of facts which again showed the specifications of his claim in detail. On December 8, 1969, Cross and Abbott admitted in writing that the plaintiff supplied the materials and labor claimed by the plaintiff.

On December 9, 1969, Springfield replied to plaintiff's request denying the matters of which an admission was requested by the plaintiff and set forth "the reasons why it cannot truthfully admit those matters." First, it stated it had no contract with the plaintiff for the materials and labor set forth in plaintiff's request for admissions. Secondly, it claimed, on information and belief, that the labor and materials "were contracted for, and ordered, by one of its codefendants, Cross Abbott Company or Abbott Realty Corporation, for the connections of its or their electric appliances, freezers, coolers or other equipment to be used by either or both of said codefendants in and about the premises described as the Super-Duper Market."

The case came on for trial by court on March 25, 1970. Before the introduction of evidence, counsel for each defendant agreed that the plaintiff had done the work and supplied the materials as claimed. Counsel for defendants Cross and Abbott then moved that defendant Springfield "be defaulted" since it had failed to file a general denial or an answer to the complaint and specifications within the time fixed by the rules then in effect and the statutes. 12 V.S.A. § 1021; 12 V.S.A. App. II, R. 14.

Counsel for Springfield took the position at the time of trial that what it said in its reply to plaintiff's request for admissions was an affirmative defense and placed its codefendants on notice. The codefendants argued that it was not the function of admission to take the place of affirmative pleadings and

that Cross was under no obligation to answer Springfield's reply to plaintiff's request.

■ ■ The document filed on December 9, 1969, by Springfield was a reply to the plaintiff's request for admissions and not a plea or answer to plaintiff's complaint. Neither can it be considered an affirmative defense to plaintiff's complaint under 12 V.S.A. § 1024. Furthermore, what was stated in Springfield's reply did not have the necessary ingredients to constitute a cross-action against the codefendants and the required procedure was not followed.

The court in treating the motion stated, "I'm going to take the position this (sic) is judgment for the plaintiff then ask the two of you to present evidence and arguments as to which of you is liable." It is apparent that the court did not excuse either Abbott or Springfield from liability.

The defendants had each acknowledged the debt due the plaintiff, having stipulated in open court that the work and the materials had been furnished as set forth in the specifications. Liability was thus settled at that point in the proceedings, but which defendant was legally responsible for the payment of plaintiff's bill was an undetermined issue. The appellant conceded on argument that the case was tried on this theory.

In ruling as it did the court, in effect, regarded the real issues as being the cross claim between the codefendants. None of the parties objected to the procedure proposed by the trial court. It is apparent that they adopted and agreed to the theory expressed by the court since they proceeded immediately with trial and introduced evidence on their respective claims. As to pleading a cross-claim against a co-party, see Rule 13, Vermont Rules of Civil Procedure.

■ Although defendant Springfield had not filed any answer or pleading to plaintiff's action, its position was clear by its answer to the motion for admission filed several months before trial. Under the circumstances in this case, the situation was governed by what Chief Justice Moulton stated in *Vaillancourt* v. *Dutton*, 115 Vt. 36, 37, 50 A.2d 762 (1947):

"... it is a well established principle that, although as a general rule cases are tried upon the issues made by the pleadings, such issues may be limited or enlarged by

, the conduct or agreement of counsel for the parties, who may thereby waive any question respecting the sufficiency of the pleadings to make available an issue not properly pleaded."

The claim of Abbott raised the issue of whether the electric wiring done by the plaintiff was the obligation of Springfield under the terms of its lease agreement with Abbott. The claim of Springfield raised the issue of whether the work was contracted for and ordered by its codefendants.

The appellants contend the refusal of the court to grant their motion that codefendant Springfield be defaulted was error. Neither defendants Cross or Abbott had filed a cross complaint or action against Springfield. Any neglect or failure of Springfield to answer plaintiff's complaint, under the state of the pleadings, could enure only to the benefit of the plaintiff. Springfield's codefendants cannot cast themselves into the position of the plaintiff in order to take advantage of, or assert, any right he had in this respect. See *Vinal* v. *Burrill*, 18 Pick. 29 (Mass. 1836) where it was held that one defendant may not pray for a default judgment against codefendants. This exception of the appellants is not sustained.

The appellant contends that the lease agreement establishes the liability of Springfield for plaintiff's bill. The written contract between Abbott and Springfield entitled "Outline of Requirements for a Super Duper Market" provided, among other things, that the builder, Springfield, was to:

"G. Provide complete system of electric wiring with all panel boards and outlets necessary both for sales area and service areas and for all lighting in connection with tenants equipment, store fixtures, equipment in store room, signs, etc. Provide all wiring and connections for and hook-up equipment throughout. . . ."

The Outline of Requirements also provided that the tenant, Abbott, among other things would:

"A. Furnish and install all merchandising fixtures in the sales room."

Defendant Springfield employed the plaintiff as its general electrical contractor to do the electrical wiring required to be

done under the contract. While the construction work was in progress, Abbott's vice-president in charge of maintenance and engineering, Mr. Henneberger, talked with Springfield's president, Mr. Young, about an electrician to do the wiring for the equipment. As a result of this, Henneberger arranged with Stevens to do the necessary wiring to hook-up coolers, refrigerator cases and other equipment. Stevens was told to send his bill each week to Cross, as he was not then sure who was to pay Stevens for this particular work. Later Henneberger by a telephone call and letter notified Stevens that Springfield was responsible for the work and not Cross.

Henneberger's letter was an exhibit and reads in part as follows:

> "Our director of real estate, Mr. Matthew Trifilo, showed this lease and specifications to B. Young and he (B. Young) agreed that the electrical work is his responsibility. As you recall I had asked you to keep the cost of wiring the cases and compressors separate because I did not have a copy of the lease and specifications with me at that time and wanted to check first who was paying for the electrical work. B. Young is aware of the fact that it is his responsibility so please forward all invoices to him."

The court found:

> "14. There was never any written contract between Stevens and Abbott Realty, but it is found that the oral arrangement by Mr. Henneberger as agent for his company, did constitute a contractual obligation by Abbott Realty to pay the Stevens bill."

Findings of facts by the court, if supported by a sufficiency of the evidence, are final. 12 V.S.A. § 2385; *Central Cab, Inc.* v. *Ironside*, 126 Vt. 356, 358, 230 A.2d 790 (1967). But, if the court erroneously misinterprets or misapplies the law respecting the evidence before it, its ultimate decision under such circumstances is subject to corrective appellate review.

Finding No. 14 as to the liability of Abbott states a conclusion of law on the facts found. Although the court had no duty to do so, once a conclusion of law is correctly

544

stated, claimed error in making such a conclusion must be predicted on the ground that it is not supported by the facts found. *Central Cab, Inc.* v. *Ironside, supra,* 126 Vt. at 360. Only when the conclusion of law is inconsistent with the facts that underlie such conclusion will it fail to stand. *Ibid.* See Rule 52 of the Vermont Rules of Civil Procedure which requires the court to state separately its conclusions of law on the facts found.

The appellant, the only party who filed a brief, argues that Mr. Henneberger was without authority to enter into any agreement on behalf of Abbott and had no intention of doing so.

■ There is neither evidence nor findings to support Finding No. 14 that Henneberger was authorized to make a binding agreement that his company would pay plaintiff's bill. The uncontradicted testimony of Henneberger is that he told Stevens, "I said I don't have a copy of the lease and I don't know who has to pay for wiring the fixtures so therefore keep all the hours and money you spend on wiring the cases, you keep them separate because I really don't know whether we or Mr. Young would pay for them."

There is no disagreement but that Henneberger requested Stevens to do the wiring after he had talked with Young and was sure of the competency of Stevens to do the wiring necessary to hook-up the equipment or fixtures. However, there was no promise by Henneberger that his company would pay Stevens for the wiring. From their conversation, Stevens could only understand that it was uncertain whether Abbott or Springfield was responsible for this cost under the lease agreement.

The finding that the oral arrangement by Henneberger constituted a contractual obligation is not supported by the law or by the facts found. Further, it is contrary to the uncontradicted evidence of Henneberger as to the oral arrangement for the work and the facts contained in the letter of August 26, 1968, from Henneberger to Stevens quoted *supra.* The statement therein that "he (B. Young) agreed that the electrical work is his responsibility" was not contradicted by Young.

The facts here are quite different than those in the case of *Rozelle* v. *Caledonia Sand & Gravel Co.,* 120 Vt. 246, 138

A.2d 619 (1958), where it was held "that the promised connection was made." We find no "promised connection" in the case at bar.

■ Under the contract between the codefendants entitled "Outline of Requirements for a Super Duper Supermarket", it was the responsibility of Springfield to provide all wiring and connections for and hook-up equipment throughout. Paragraph G. *supra*. This paragraph expressed the intent of the parties in plain, clear and precise language which leaves no room for construction or interpretation. *H. P. Hood & Sons v. Heins*, 124 Vt. 331, 336, 205 A.2d 561 (1964). And where the language is clear, the intention and understanding of the parties must be taken to be that which their agreement declares. *Ibid*.

■ The contract also provided under the paragraph entitled "Procedure" that Abbott would furnish typical plans to Springfield in order to make it aware of certain minimum construction requirements. The evidence shows that Springfield constructed the supermarket on the basis of the typical plans and specifications furnished by Abbott. Such plans being referred to in the main contract became a part of it. *Newton v. Smith Motors, Inc.*, 122 Vt. 409, 412, 175 A.2d 514 (1961).

One typical plan shows the electrical conduits and pipes to be placed beneath the cement floor through which wiring would be pulled. A second typical plan showed the type, model number, size, and exact location of the various refrigerator cases, coolers and compressors which were to be connected according to the manufacturer's specifications. This plan with the manufacturer's specifications and diagrams gave Stevens sufficient information to hook-up the refrigeration cases.

■ The legal effect of a written instrument is a conclusion of law and is open to determination on appeal. *Mahoney v. Leddy*, 126 Vt. 98, 101, 223 A.2d 456 (1966). We hold that the contract bound Springfield not only to provide all wiring and connections required for Abbott's electrical equipment for its supermarket but also to hook-up the equipment throughout. The contract and typical plans clearly demonstrates this was the intention declared by the parties. *Cross Abbott Co. v. Howard's, Inc.*, 124 Vt. 439, 441, 207 A.2d 134 (1965).

546

Furthermore, as previously pointed out, Abbott's letter to Stevens contains the unrefuted statement that after Abbott's director of real estate talked with Mr. Young, he, Young, agreed that the electrical work was his responsibility. This was his own interpretation of the contract.

 The judgment entered on the basis of the theory the court expressed in Finding No. 14 is invalid and must be set aside. Deciding, as we do, that the cost of the electrical work performed by the plaintiff for which he brought this suit, is the obligation of defendant Springfield under its contract with Abbott, it follows that the plaintiff is entitled to judgment against defendant Springfield. No reason appearing why a remand is necessary, we will enter final judgment. *Alburg* v. *Rutland Railway Corps.*, 119 Vt. 476, 488, 129 A.2d 506 (1957).

*Judgment against defendant Cross Abbott Company and Abbott Realty Corporation is set aside; final judgment is entered for the plaintiff to recover from defendant Springfield Realty Corporation the sum of $4326.43 plus interest at six per centum (6%) from February 3, 1969, and costs. Defendants Cross Abbott Company and Abbott Realty Corporation to recover its costs against defendant Springfield Realty Corporation.*