# Raymond and Lillian Rogers v. W. T. Grant Company

[321 A.2d 54]

No. 232-73

Present: Barney, C.J., Smith, Keyser, Daley, and Larrow, JJ.

Opinion Filed June 4, 1974

*Hoff, Curtis, Bryan, Quinn & Jenkins,* Burlington, for Plaintiffs.

*Karen McAndrew, Esq.,* of *Dinse, Allen & Erdmann,* Burlington, for Defendant.

**Daley, J.** The plaintiffs, Raymond and Lillian Rogers, brought a civil action in the District Court of Vermont, Unit No. 2, Chittenden Circuit, seeking to recover for property damage to their home occasioned by a fire on March 6, 1968. Their complaint alleged that the fire was the proximate result of a breach by the defendant, W. T. Grant Company, of an implied warranty by the defendant that an electric blanket purchased in September, 1966, at the defendant's retail store in Burlington, Vermont, was fit for the purpose of and merchantable for use as an electric heating blanket on a bed. The defendant denied the claims made against it in the complaint and, as a matter of defense, pleaded the statute of limitations. The court ruled that the cause was governed by the provisions of the Uniform Sales Act, as the purchase was made before the effective date of the Uniform Commercial Code in this State. The court determined that the cause was not barred by the statute of limitations and heard it, sitting without

jury. After findings of fact and conclusions of law were made and filed, the court entered judgment for the defendant.

The plaintiffs now appeal to this Court contending that the trial court erred: (1) in its application of the law to the facts found; (2) in holding that the evidence introduced by Mrs. Rogers was insufficient to prove her case; and (3) in that its findings of damages were clearly erroneous.

The trial court found that on March 6, 1968, a fire broke out in the bedroom of the plaintiffs' teenage daughter, who was a member of the plaintiffs' household. The fire originated in an electric blanket which Mrs. Rogers had purchased from the defendant in 1966. This blanket had been subjected to ordinary wear and use since the time of its purchase and, as to outward appearance, was in substantially the same condition as when purchased. The control unit was not introduced into evidence, but the court found from testimony of a witness, who was present at the scene of the fire, that the control had been in the "on" and "high" position. In the opinion of an expert in the repair of small appliances, the control unit was defective at the time of the fire and probably caused it. The deepest charring occurred in the area of the electric blanket on the bed; the blanket was a mass of burned wires. The court, in its findings, stated: "That the court is unable to find specifically what the defect in this particular control head was, and is unable to find that any such defect was present at the time of purchase."

Upon these facts, the trial court concluded:

> Absent information as to the manufacture or brand name of the blanket, or the quality of the product, it is difficult to determine whether the defect, whatever it may have been, was inherent in this particular control unit or merely the result of an inferior product. The normal use of the blanket over the two years prior to the fire raises an inference that the blanket was fit for the intended use.

The court concluded further:

> Plaintiffs' evidence raises only a suspicion that the defect was inherent in this particular control unit at

the time of purchase. . . . Under the circumstances, therefore, there is only the possibility, suspicion or surmise that the defendant is liable, and this is not sufficient.

## I.

The implied warranty of merchantability, like that of fitness, is primarily directed at the operative essentials of the product. *Tracy* v. *Vinton Motors, Inc.*, 130 Vt. 512, 516, 296 A.2d 269 (1972). As Mr. Justice Powers put it in *Wing* v. *Chapman*, 49 Vt. 33, 35 (1876), "If a man sells an article, he thereby warrants that it is merchantable—that it is fit for some purpose. If he sells it for a particular purpose, he thereby warrants it fit for that purpose. . . ." See also *Brown* v. *Sayles*, 27 Vt. 227, 229–31 (1854); *Beals* v. *Olmstead*, 24 Vt. 114, 118, 58 Am. Dec. 150 (1852).

The authorities are in agreement that in a products liability case, where the injured party predicates his claim on a breach of an implied warranty of fitness or merchantability, recovery depends on the establishment of two essential foundations. The product allegedly causing the injury was harmful or deleterious in some way; and the defect existed as of the time that the product was in the possession or under the control of the seller. Annot., 80 A.L.R.2d 598, 621 (1961); 63 Am.Jur.2d *Products Liability* §§ 9, 10; see also *Pease* v. *Sabin*, 38 Vt. 432, 436, 91 Am. Dec. 364 (1866).

The finding of the trial court that it was unable to find what the defect was and that such defect was present at the time of purchase clearly shows that the court, sitting as trier of fact, examined the evidence offered to determine whether a defect existed and if so, when such defect did exist. The defendant seller last had possession and control of the product at the time of purchase by the plaintiffs. The trial court was correct in using the occurrence of the purchase as the pivotal point in time to determine possession and control of the product in relation to the existence of a defect in order to ultimately conclude that the defendant was not liable. The trial court applied the correct law to the evidence presented in arriving at its decision; the plaintiffs take nothing on their first claim of error.

## II.

The plaintiffs' next claim of error attacks the trial court's conclusion as to the insufficiency of the evidence to prove their case. This claim is reminiscent of the claim of error of the defendant in *Miller* v. *Rossier*, 107 Vt. 479, 181 A. 105 (1935). The defendant there claimed seasonable recision of a sale because of a breach of warranty in an action for the recovery of the purchase price of a corn cutter and blower sold to the defendant by the plaintiff. As the trial court in the case at bar was unable to find that a defect was present in the electric heating blanket at the time of purchase, the trial court in *Miller* was unable to find that there was anything the matter with the cutter and blower at the defendant's farm; hence, no breach of warranty.

Mr. Justice Sherburne, writing for the Court in *Miller*, noted that the burden of proving a breach of warranty is upon the one alleging such a breach. *Id.* 107 Vt. at 481. He went on to note at page 482:

> The statement "unable to find" in the findings does not necessarily mean that there was no evidence tending so to show, but it does mean that such evidence, in the trier's judgment, does not preponderate, and so in a legal sense he was unable to make such finding. *White River Chair Co.* v. *Conn. River Power Co.*, 105 Vt. 24, 38, 39, 162 Atl. 859; *McClary* v. *Hubbard*, 97 Vt. 222, 238, 122 Atl. 469.

This is the situation in the case at bar. Both the plaintiffs' witnesses, the one present at the scene of the fire and the expert in the repair of small appliances, were extensively cross-examined and in one instance directly examined by the defendant's counsel. The control unit, which was represented to be the catalyst of the plaintiffs' injury, was not placed into evidence. The evidence offered was adjudged by the trial court to be insufficient to sustain the plaintiffs' burden of proving a breach of an implied warranty of fitness or merchantability and thus unable to convince it as trier of fact that the defendant was liable to the plaintiffs for their injury. See also *Cook* v. *Holden*, 113 Vt. 409, 413, 35 A.2d 353 (1944).

Rule 52(a) of the Vermont Rules of Civil Procedure (D.C. C.R. 52) sets the standard in reviewing findings of fact made

by the trial court sitting without a jury. "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses and the weight of the evidence." See also *Seaway Shopping Center Corp.* v. *Grand Union Stores, Inc.,* 132 Vt. 111, 116–17, 315 A.2d 483 (1974). Moreover, this Court must construe those findings so as to support the judgment. *Largess* v. *Tatem,* 130 Vt. 271, 280, 291 A.2d 398 (1972).

The findings of fact made by the trial court that rendered judgment have, before this Court, the same standing of the verdict of a jury expressly approved by the trial court. *Platt* v. *Shields,* 96 Vt. 257, 271, 119 A. 520 (1923). Even where the evidence may preponderate against the findings of the trial court, this Court cannot overturn those findings. *Holton Estate* v. *Ellis,* 114 Vt. 471, 488, 49 A.2d 210 (1946); *Platt* v. *Shields, supra.* In its appellate functions, this Court may not substitute its own judgment for that of the trial court on questions of fact. *Everlasting Memorial Works* v. *Huyck Monument Works,* 128 Vt. 103, 109, 258 A.2d 845 (1969); *Platt* v. *Shields, supra,* 96 Vt. at 272. If the evidence offered by the plaintiffs could not convince the trial court of the defendant's liability in this case, it is certainly not going to convince this Court of the defendant's liability on appeal. The plaintiffs have not presented anything to impeach the findings and judgment of the trial court.

## III.

Since the plaintiffs have presented nothing warranting this Court to disturb the trial court's judgment for the defendant, we have no need to review the claim of error as to the damages found by the trial court. As the defendant is not liable to the plaintiffs for their injury the question of damages becomes moot and will not be considered on appeal. *Brooks* v. *Brooks,* 131 Vt. 86, 94, 300 A.2d 531 (1973).

*Judgment affirmed.*