**Josaphat Bolduc, et al. v. Lester H. Coffin, Sylvia P. Coffin and Winona Recreation Area, Inc.**

[329 A.2d 655]

No. 164-73

Present: Barney, C.J., Smith, Keyser and Daley, JJ., and Shangraw, C.J. (Ret.)

Opinion Filed December 3, 1974

68

*Richard B. Hirst, Esq.,* of *Langrock & Sperry,* Middlebury, and *Gerald F. Trudeau, Esq.,* Middlebury, for Plaintiffs.

*Charity A. Downs, Esq.,* of *Conley & Foote,* Middlebury, for Defendants.

**Smith, J.** A judgment on the merits by the Addison County Court, sitting without a jury, that the defendant proprietors of a swimming area operated for profit are not liable for the death by drowning of Luke Bolduc, a seven-year-old non-swimmer, is appealed here by Luke's parents.

The individual defendants are the sole shareholders of the corporation, to which they leased the property utilized as a camping, swimming, and picnic facility. The swimming area was man-made, by the addition of sand to an area of a four and one-half acre pond. It is delineated by two parallel buoyed ropes extending sixty-five feet out from shore. Within this area, the depth of the water increases one foot for each ten feet traveled away from the shoreline.

No lifeguards were on duty August 8, 1971, the day of the drowning and, in fact, the defendants had firmly rejected

the idea of hiring any. There was no area roped off between the two parallel lines for small children and nonswimmers. There was a life preserver on a raft located beyond the end of the buoyed ropes and, in three prominent places on the land area, there were signs which read "Swim at Your Own Risk— No Lifeguard on Duty—Watch your Own".

The decedent's body was found in approximately seven feet of water to the outside of the rope on the right, as viewed from the shore, some twenty minutes or more from the time the search for him began. The search began after his father, who had been sitting beside him on the beach, noticed his absence. The time span between Luke leaving his father and the latter's discovery of his absence was undoubtedly short, but cannot be stated with certainty.

During the crucial period between the discovery that the decedent was missing and the recovery of the body, according to the father's testimony, somebody said that Luke had gone to the bathhouse. A search was made there, and then someone told the father that perhaps the boy had gone home or into the woods. "Nobody said in the water."

There were approximately one hundred and seventy-five persons on the beach at the time of the drowning, and neither they nor the plaintiffs saw exactly what happened to the decedent nor any activity or disturbance indicating that anyone in the water was in distress.

These facts present a case of first impression in this State. They essentially repeat the findings of fact found by the lower court, which have not been challenged on appeal and must be construed to support the judgment. *Rogers* v. *W. T. Grant Co.*, 132 Vt. 485, 489, 321 A.2d 54, 58 (1974); *Largess* v. *Tatem*, 130 Vt. 271, 280, 291 A.2d 398 (1972).

■ Misapplications of the law to supported or unchallenged findings are subject to corrective appellate review. *Stevens* v. *Cross Abbott Co.*, 129 Vt. 538, 543, 283 A.2d 249 (1971). Such correction is sought by plaintiffs, as they challenge what the lower court characterized as conclusions of law that:

Based on the Findings of Fact the Court concludes that the failure of the defendant to furnish a lifeguard was not in and of itself sufficient negligence to warrant recovery

on behalf of the plaintiff. The Court from the Findings of Fact concludes there is no causal connection between the failure to furnish a lifeguard and the drowning of the child.

If, the plaintiffs contend, the first sentence is a conclusion that the defendant was not negligent, it is clearly erroneous and, alternatively, it is defective because the trial court nowhere states in writing what the standard of care was that the defendants were required to satisfy. To the latter, the defendants counter that a trial judge sitting without a jury is not required to charge himself.

The plaintiffs also urge that a conclusion that the absence of a lifeguard is "not in and of itself sufficient negligence" is a conclusion that the defendants were negligent. We agree that it is a curious phrase and can only be satisfactorily explained by accepting it as a cloudier formulation of the court's subsequent conclusion that any negligence of the defendants was not the proximate cause of the decedent's death. The defendants were either negligent or they were not; the quantity of any negligence is not a legal issue. The negligence of the decedent or his parents was not made an issue at trial, and a conclusion of insufficient negligence cannot be justified as a comparative negligence finding under 12 V.S.A. § 1036. Finally, if the court had concluded that the defendants were not negligent at all, any conclusion with respect to proximate cause would be superfluous.

The lower court apparently determined that the defendants were negligent or, without explicitly deciding that issue, that even if the defendants were negligent, such negligence was not the proximate cause of death. If the former is the case, the plaintiffs have no complaint with a conclusion that the defendants were negligent; if the latter, a remand for clarification would initiate a needless expenditure of judicial energy if the court's conclusion that there was no proximate cause is not clearly erroneous. Only last term this Court reached the proximate cause issue where it first assumed that a valid claim of negligence in amended pleadings might be possible. *Rivers* v. *State*, 133 Vt. 11, 13, 328 A.2d 398 (1974). It is equally appropriate to do so where evidence similar to that already presented has been held sufficient to uphold a factfinder's finding of negligence in other jurisdictions. *See*

*Mullen* v. *Russworm,* 169 Tenn. 650, 90 S.W.2d 530, 532 (1936), and cases there cited; Annot., 48 A.L.R.2d 104, § 13 (1956).

We hold that the lower court's conclusion that the failure to furnish a lifeguard was not the proximate cause of the child's drowning is not clearly erroneous. It finds support in the facts for "this boy simply disappeared from sight . . . where more than 150 people were present. None of these people witnessed his disappearance. Nobody saw him in any trouble. Nobody knows where he sank under the water". *Mullen* v. *Russworm, supra,* 90 S.W.2d at 532. "[T]he evidence does not reveal how, when, or where he died. All these matters are left to pure speculation." *Hahn* v. *Perkins,* 228 N.C. 727, 46 S.E.2d 854, 858 (1948).

> Lifeguards are to aid those in distress, and unless there is some cause to believe that one is in distress they cannot be expected to act. It cannot be inferred, without resorting to pure speculation, that if there had been one lifeguard, or any number of lifeguards . . . [the decedent] would not have drowned.

*Blacka* v. *James,* 205 Va. 646, 139 S.E.2d 47, 51 (1964); *accord, Lyman* v. *Hall,* 117 Neb. 140, 219 N.W. 902, 904 (1928). Speculation and "conjecture [are] no proof in him who is bound to make proof." *Paquin* v. *St. Johnsbury Trucking Co.,* 116 Vt. 466, 472, 78 A.2d 683 (1951).

There are no material factual distinctions between the four foreign cases cited above, and we find it worthy of note that in both *Blacka* and *Lyman* the factual situations furnished the rationale for the appellate courts' reversals of jury verdicts awarded plaintiffs at trial.

The plaintiffs argue, however, that the decedent in the case at bar could only have gotten into the deep water where he drowned by using the buoyed ropes, since transportation against his will by another would have created an observable disturbance. The defendants were aware, the argument continues, that swimmers often used these ropes, and the practice was discouraged by the defendants who could have foreseen tragedy resulting. However, "[f]oreseeability, although an ingredient in the determination of negligence, is

not a factor in the determination of proximate cause." *Rivers v. State, supra,* 133 Vt. at 13; *accord, Dodge v. McArthur,* 126 Vt. 81, 83, 223 A.2d 453 (1966).

The argument that an available lifeguard would have shepherded the decedent off the ropes, thereby preventing the drowning, is premised on speculation that the decedent used the ropes. Furthermore, acceptance of the plaintiffs' theory, in support of which they cite no authority, that they need only advance a set of circumstances from which a factfinder could infer proximate cause to shift the burden of proof to the defendants to counter these circumstances would in effect make the defendants insurers of their patrons' safety, which they are not. *Blacka v. James, supra,* 139 S.E.2d at 50; *Hahn v. Perkins, supra,* 46 S.E.2d at 856.

What we have previously said is equally dispositive of the allegations that the defendants were negligent in not roping off an area for nonswimmers and that such negligent omission was the proximate cause of death. Nothing in this opinion should be taken to mean that disclaimers of liability such as were posted here are necessarily effective.

*Judgment affirmed.*

**Shangraw, C.J.** (Ret.), Assigned. I respectfully dissent from the order of this Court affirming the judgment below. My primary concern is that the trial court failed to pass on the necessary issues properly presented below, without which an affirmance of the judgment in favor of the defendants on the limited basis set forth in the majority opinion appears to me ill-advised.

In their complaint, plaintiffs allege negligence on the part of the defendants in the following particulars:

A. In maintaining a private recreational area for use of the general public, and Plaintiffs in particular, on a paid basis, without providing adequate and necessary safeguards so as to prevent injury or death to persons using Defendants' facilities, such as decedent, such as by failing to provide lifeguards; failing to erect proper fences and barricades around the swimming area; failing to provide a limited area of said pool which was shallow,

properly roped off and supervised for the use of young children; failing to provide and have readily accessible adequate and proper resuscitation equipment; failing to provide proper and adequate telephone facilities at the site of their recreational facilities for emergency purposes; . . .

B. In providing an attractive nuisance for minor children such as decedent.

C. In opening said recreational facilities with the knowledge of all of the obvious hazards.

Notwithstanding the several distinct allegations of negligence, the case was disposed of below adversely to the plaintiffs on the following limited basis as revealed by the trial court's conclusion of law:

Based on the Findings of Fact the Court concludes that the failure of the defendant to furnish a lifeguard was not in and of itself sufficient negligence to warrant recovery on behalf of the plaintiff. The Court from the Findings of Fact concludes there is no causable connection between the failure to furnish a lifeguard and the drowning of the child . . . .

It is universally accepted that a private owner or operator of a bathing resort or swimming pool is not an insurer of the safety of his patrons. Rather, he is bound to use ordinary, due, or reasonable care for the safety of his patrons. 4 Am. Jur. 2d, Amusements and Exhibitions, Sec. 84. This comports with the following statement in *Garafano* v. *Neshobe Beach Club*, 126 Vt. 566, 570, 238 A.2d 70 (1967):

If the owner or occupier of land "directly or by implication induces persons to enter on and pass over his premises, he thereby assumes an obligation that they are in a safe condition, suitable for such use".

The area in question was open for swimming by family groups on a fee paid basis. Thus, it would appear to have been the defendants' duty to assure that the four-acre pond was reasonably safe for such use, which included the participation of children and non-swimmers in water activities.

The following facts are not controverted: No lifeguard was in attendance; there were no markers indicating the

depth of water at different points; no area was roped off between the two parallel lines for the use of small children or non-swimmers. It is my understanding that children frequently transported themselves over deep water along the buoyed ropes, which fact was known to Mr. Coffin. The decedent's body was found in seven feet of water forty to fifty feet from shore near a buoyed rope. As bearing upon the duties and liabilities of the operator of a bathing resort, see Annot., 48 A.L.R. 2d 104 (1956), and A.L.R.2d Later Case Service (supplementing Annot., *supra*, 48 A.L.R.2d at 126, § 13[a]).

In its determination of liability or non-liability, the trial court was confronted with the following question: "Did the defendants neglect to perform their duty to use the requisite overall degree of care for the decedent's safety?" A resolution of this issue was not made at the trial level. The court merely passed on only one of the several claims of alleged negligence; namely, the absence of a lifeguard.

I am satisfied that the plaintiffs have been shortchanged. I would reverse and remand.