# State of Vermont v. Kevin P. Clark

[460 A.2d 449]

No. 82-214

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed April 5, 1983

*Richard G. English,* Addison County State's Attorney, and *John T. Quinn,* Deputy State's Attorney, Middlebury, for Plaintiff-Appellee.

*Richard F. Taylor*, Middlebury, for Defendant-Appellant.

**Billings, C.J.** Defendant was convicted of operating a motor vehicle on a public highway while under the influence of intoxicating liquor. 23 V.S.A. § 1201(a)(2). Prior to the hearing on the merits, defendant filed a motion to suppress certain incriminating statements he had made to the police while being processed for the offense charged. Defendant claims that at the time he made the statements he was incapable of knowingly and intelligently waiving his constitutional rights. Of primary concern to the defendant was his admission as to the operation of the vehicle, without which the State would have been unable to prove this element of the offense.

The suppression motion was heard by a second judge, prior to trial. In denying the suppression motion, the court found that at the time defendant waived his rights, his mental capacity "was not so overborne by his alcoholic condition that he could not have been conceived to be able to comprehend such rights and make a knowing waiver thereof." The court then cited *State* v. *Pease*, 129 Vt. 70, 74–75, 271 A.2d 835, 838 (1970), as authority for this standard. Defendant contends, however, and the State agrees, that *Pease* recites an appellate review standard, applicable where the issue of competent waiver was not raised below. In contrast, at the trial level it is the State's burden to establish, by a preponderance of the evidence, that the defendant knowingly and intelligently waived his Fifth Amendment rights. *State* v. *Badger*, 141 Vt. 430, 439, 450 A.2d 336, 341 (1982); *State* v. *Breznick*, 134 Vt. 261, 265, 356 A.2d 540, 542 (1976).

We agree with the parties that the standard used impermissibly shifted the burden of proof to defendant, and as such constituted reversible error. The State would argue against reversal, contending that the trial court's findings provide a sufficient basis for the conclusion that the State proved by a preponderance of the evidence that defendant's waiver was knowing and voluntary. However, with regard to the crucial issue of defendant's mental capacity at the time of the supposed waiver, the two relevant findings merely recite the witnesses' testimony, and as such are improper and provide no support for a judgment. *Valsangiacomo* v. *Paige &*

*Campbell, Inc.,* 136 Vt. 278, 279–80, 388 A.2d 389, 390–91 (1978) ; *Krupp* v. *Krupp,* 126 Vt. 511, 514–15, 236 A.2d 653, 655–56 (1967). While the remainder of the findings are not improper, neither are they sufficient to establish defendant's mental competence to the degree required by law.

For these reasons the trial court's suppression order is reversed, and defendant is entitled to a new trial on the merits.

*Reversed and remanded.*

**Peck, J.,** dissenting. For the reasons set forth below, I am firmly convinced that the disposition of this case by the majority is wrong, and that there exist more than ample grounds to affirm based on our own precedential holdings. Accordingly, I have no choice but to dissent.

I do agree with the majority that the suppression court's findings 10 and 12 are not proper as findings of fact. Finding 10 is a mere recitation of testimony: "[T]he witness, Trooper Yustin, explained that . . . ." Had the court even added, "and the court so finds," it might have been saved. However, it did not do so, and this "recitation" cannot, therefore, be relied on to support the order. Similarly, finding 12 merely recites an opinion of the police without any factual conclusion based thereon.

Findings 10 and 12 would, if properly phrased, have provided strong support for the lower court's conclusion that "the mental capacity of the Defendant was not so overborne by his alcoholic condition that he could not have been conceived to be able to comprehend such rights and make a knowing waiver thereof."

The court found that defendant told the police "You can't get me for D.U.I.," and further that he told the police he was going to sue them.

When defendant was asked if he wished an attorney, he "replied that he did not need one, that he'd been through the process before and knew how to handle the situation."

After he had been advised of his rights, the court said that defendant "stated he would not answer any questions." He reconsidered almost immediately and said, " 'You ask the questions and I tell you whether I'll answer it'; or words to that effect."

The court found that defendant refused to discuss where

he had been drinking and when he had taken his last drink, but that he answered all the other questions on page 2 of the processing form, "and such answers were logical and appropriate."

When the police started to explain to defendant the procedure by which a breath sample test is given, the court found that he stated he understood the procedure "in that he had been through it in the past . . . and knew how to do it . . . ."

These findings show clearly that defendant's responses are those of a reasonably intelligent person who understood and was fully aware of the situation he was in. Indeed his responses were far more coherent, logical, intelligent, and appropriate than those of many other D.U.I. suspects we have had occasion to review. Cf. *Stockwell* v. *District Court,* 143 Vt. 45, 460 A.2d 466 (1983).

The fact that the court applied the wrong standard of review is not fatal. "Misapplications of the law to supported or unchallenged findings are subject to corrective appellate review." *Bolduc* v. *Coffin,* 133 Vt. 67, 69, 329 A.2d 655, 656 (1974) (citation omitted). Moreover, nothing has been brought to our attention to suggest that the motion to suppress was renewed during the trial on the merits, or that any objection was made at trial to the admission of his incriminating statement. We will not search the record for errors; if they do exist, they have not been brought to our attention.

We are concerned here only with the suppression hearing which took place before a different judge than the judge who presided at the trial on the merits. The error was harmless since the evidence and the proper findings would support the conclusion if the correct "preponderance of the evidence" standard had been applied. Indeed, even the error is not in the conclusion itself. That is supportable under either criteria. The sole mistake was the citation to *State* v. *Pease,* 129 Vt. 70, 271 A.2d 835 (1970), as authority for the conclusion. But since it is unmistakable in my judgment that the conclusion is supported by the findings and an overwhelming preponderance of the evidence, it is impossible for me to comprehend how the defendant has shown any prejudice, *State* v. *Baldwin,* 140 Vt. 501, 514, 438 A.2d 1135, 1142 (1981), or the error anything but completely harmless. *Timney* v. *Worden,* 138 Vt. 444, 445, 417 A.2d 923, 924 (1980).

Finally, we have held many times that we will affirm the lower court if there is any legal basis for doing so. *Frost* v. *Tisbert*, 135 Vt. 345, 347, 376 A.2d 748, 751 (1977). In the case before us the court reached a proper and adequately supported conclusion, albeit for the wrong reason; that does not require reversal. "A trial court can achieve the right result for the wrong reason." *Gilwee* v. *Town of Barre*, 138 Vt. 109, 111, 412 A.2d 300, 301 (1980). I would affirm.